UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:22-CR-00591-JAR ) |
| NIKIA A. FRENCH, | ) ) |
| Defendant. | ) ) |

**GUILTY PLEA AGREEMENT**

Come now the parties and hereby agree, as follows:

**1. PARTIES:**

The parties are the defendant Nikia A. French, represented by defense counsel Julie Clark, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

**2. GUILTY PLEA:**

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Counts I – II (bank fraud) of the Indictment, the United States agrees that no further federal prosecution will be brought in this District relating to the defendant's participation in the check fraud scheme described in the Indictment between February 2022 and April 2022, of which the Government is aware at this time.

1

In addition, the defendant admits to having submitted fraudulent Paycheck Protection Program ("PPP") loan applications and agrees that her PPP loan fraud constitutes relevant conduct under the U.S. Sentencing Guidelines.  In exchange, the United States agrees that no further federal prosecution will be brought in this District relating to the defendant's fraudulently obtaining two PPP loans between April 2021 and May 2021, of which the Government is aware at this time.

The parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea.  The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a).  The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request.

The defendant also agrees, pursuant to the guilty plea to Counts I – II, to forfeit to the United States all property subject to forfeiture under the applicable statute(s), including but not limited to: any and all funds obtained as a result of the defendant's check fraud scheme.

3. **ELEMENTS:**

   a. **Count I – II (Bank Fraud)**

As to Count I through II, the defendant admits to knowingly violating Title 18, United States Code, Section 1344(2), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

*One*, the defendant knowingly executed a scheme to obtain any of the moneys owned by, or under the custody and control of, a financial institution, by means of material false or fraudulent pretenses, representations, or promises; and

*Two*, the financial institution was insured by the Federal Deposit Insurance Corporation.

4. **FACTS:**

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

  a. **Bank Fraud**

Beginning no later than in or about February 2022, and continuing through at least in or about April 2022, in the Eastern District of Missouri, the defendant Nikia A. French executed a scheme to obtain money owned by or under the custody and control of a financial institution, by means of materially false and fraudulent pretenses, representations, and promises.

More specifically, French participated in a scheme to obtain money from Commerce Bank by fraudulently depositing counterfeit checks into various Commerce Bank accounts and withdrawing the check funds as proceeds. As part of the scheme, French recruited individuals with Commerce Bank accounts to allow their accounts to be used for the deposit of counterfeit checks. Account holders provided debit cards, Personal Identification Numbers ("PINs"), and other banking information for their Commerce Bank accounts to French, often in exchange for a portion of the proceeds from the deposit of the counterfeit checks. French recruited account holders using her social media accounts, specifically Instagram, and directly communicated with account holders about the deposit of counterfeit checks into their accounts. Other participants in

3

the scheme also recruited account holders on French's behalf and acted as an intermediary between French and the account holders. The account holders whose Commerce bank accounts French used as part of the scheme included Individuals L.P., M.J., E.M., T.B., A.T., K.W., C.P., and R.W.

As part of the scheme, French obtained counterfeit checks and caused the checks to be made payable to the account holders and in amounts typically around $5,000. The accounts on which the checks were drawn were real accounts and belonged to real victims. French knew that the checks were counterfeit and that the victims on whose accounts the checks were drawn had not authorized the checks. French often deposited or caused the deposit of multiple counterfeit checks drawn on the same victim's account. During the scheme, French deposited or caused the deposit of counterfeit checks drawn on the accounts at least five different business victims.

As part of the scheme, French deposited counterfeit checks, or directed other participants in the scheme to deposit the checks, into the account holders' Commerce Bank accounts using the debit cards and PINs provided by the account holders. French deposited these checks for the purpose of inflating the balances in these accounts. These deposits occurred at Commerce Bank ATMs in St. Louis County, Missouri and were captured on ATM surveillance cameras. Prior to a deposit, French often conducted in-person inquiries at Commerce Bank ATMs, using the account holder's debit card, to determine whether the account was active and the account balance. After a counterfeit check was deposited, French monitored the account holder's Commerce Bank account in order to withdraw funds as soon as possible after the bank made them available and before the bank discovered that the check was fraudulent. French also contacted Commerce Bank customer service over the phone and pretended to be the account holder to verify the check deposit, using the account information provided by the account holder. Once Commerce Bank made funds

4

available, French withdrew the proceeds, typically through cash withdrawals at ATMs or by making purchases using the account holder's debit card.

As to Count I, on February 15, 2022, French executed the scheme by causing the deposit of a counterfeit check, bearing #3802 and purportedly drawn on Investors Bank account #xxxxx6329 belonging to Business Victim S.M.M., and payable to Individual L.P. in the amount of $4,698.07, into the Commerce Bank account #xxxxx0359 in the name of Individual L.P., for the purpose of obtaining money under the custody and control of Commerce Bank, a financial institution within the meaning of Title 18, United States Code, Section 20.  French directed another participant in the scheme to conduct the deposit of this check at the Commerce Bank branch in Affton, Missouri.

As to Count II, on February 15, 2022, French executed the scheme by withdrawing $1,000 from Commerce Bank account #xxxxx0359 in the name of Individual L.P. at a Commerce Bank ATM at the Affton branch, following the deposit of a counterfeit check into the account earlier that day, for the purpose of obtaining money under the custody and control of Commerce Bank, a financial institution within the meaning of Title 18, United States Code, Section 20.

Over the course of the scheme, between February 2022 and April 2022, French caused the deposit or attempted deposit of counterfeit checks totaling at least $73,515.22 and received at least $34,109.66 in proceeds.

    b. **Other Relevant Conduct: PPP Loan Fraud**

Between in or around April 2021, and in or around May 2021, the defendant Nikia A. French engaged in a scheme to fraudulently obtain PPP loans.

On March 13, 2020, the President declared a national emergency under Section 501(b) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act ("Stafford Act") in response to the COVID-19 pandemic. The President also subsequently authorized major disaster declarations for all fifty states under Section 401 of the Stafford Act. The PPP, created by the Coronavirus, Aid, Relief, and Economic Security ("CARES") Act, was a COVID-19 pandemic relief program administered by the Small Business Administration ("SBA") that provided forgivable loans to small businesses for job retention and certain other expenses. PPP loan funds were authorized, transmitted, disbursed, and paid in connection with the COVID-19 Stafford Act emergency and major disaster declarations.

The PPP permitted participating third-party lenders to approve and disburse SBA-backed PPP loans. The types of businesses eligible for a PPP loan included individuals who were self-employed and who did not have any employees. To obtain a PPP loan, a qualifying self-employed individual submitted a signed PPP loan application and was required to certify, among other things, the annual income of his or her business, as typically reported to the Internal Revenue Service on Form 1040, Schedule C, for a given tax year. The amount of PPP loan for which a qualifying individual was eligible was based on these certifications. An applicant also had to certify that the applicant had not been convicted of or pleaded guilty to "any felony involving fraud, bribery, embezzlement, or a false statement in a loan application or an application for federal financial assistance" within the last five years, and that the PPP loan proceeds would be used for eligible expenses, namely payroll. Borrowers who obtained a PPP loan were permitted to apply for a "Second Draw" PPP loan, provided they certified that they had used the proceeds from the "First Draw" PPP loan on eligible expenses.

6

Fountainhead SBF ("Fountainhead") was a third-party participating PPP lender. Womply was a technology company that provided an Internet-based platform to receive and process PPP loan applications for, among other PPP lenders, Fountainhead. Womply processed applications for PPP loans submitted to Fountainhead through an Internet-based web portal that was hosted on servers located in Virginia and Oregon.

On or about May 18, 2020, in the United States District Court for the Eastern District of Missouri, in *United States v. Nikia French*, Case No. 4:19-CR-01035-AGF, French pleaded guilty to six counts of Bank Fraud and was sentenced, on or about August 19, 2020, to a term of imprisonment of 12 months and one day.

As part of the scheme, French submitted two fraudulent PPP loan applications, each for approximately $11,532, as a self-employed individual to Fountainhead. French submitted the first application on April 2, 2021, and the second on April 14, 2021. On both PPP loan applications, French misrepresented her gross income in order to inflate the amount of PPP loan she could receive. Specifically, French falsely represented that her gross income in 2020, as reported on IRS Form 1040, Schedule C, was $55,356. In support of this misrepresentation, French submitted with both PPP loan applications a fraudulent IRS Form 1040, Schedule C (Profit or Loss from Business), that purported to have been filed by French in 2020. French falsified this Schedule C and fabricated her gross income. French also falsely certified that she had not been convicted of or pleaded guilty to any felony involving fraud within the past five years, despite having been sentenced for bank fraud less than a year earlier. Based on the fraudulent misrepresentations in her PPP loan applications, French caused Fountainhead to approve the applications and to disburse the loan funds into French's bank account. French did not spend the PPP loan proceeds on

authorized expenses and instead used the money to pay for personal expenditures, such as at clothing stores and restaurants, and for cash withdrawals.

In total, between April 2021 and May 2021, French submitted two fraudulent PPP loan applications containing material misrepresentations.  As a result of these fraudulent applications, French fraudulently obtained $23,064 in PPP loan proceeds.

**5. STATUTORY PENALTIES:**

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty under Counts I though II is imprisonment of not more than 30 years, a fine of not more than $1,000,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than 5 years.

**6. U.S. SENTENCING GUIDELINES (2021 MANUAL):**

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category.   The parties agree that the following are the applicable U.S. Sentencing Guidelines Total Offense Level provisions.

    a. **Chapter 2 Offense Conduct:**

        **(1) Base Offense Level:**  The parties agree that the base offense level is 7, as found in Section 2B1.1(a)(1).

        **(2) Specific Offense Characteristics:**  The parties agree that the following Specific Offense Characteristics apply:

The parties agree that 8 levels should be added pursuant to Section 2B1.1(b)(1)(E), because the loss exceeds $95,000, but does not exceed $150,000.

8

The parties agree that 2 levels should be added pursuant to Section 2B1.1(b)(12), because the offense involved conduct described in 18 U.S.C. § 1040.

    b. **Chapter 3 Adjustments:**

        **(1) Aggravating Role:** The parties agree that 3 levels should added pursuant to Section 3B1.1(b), because the defendant was a manager or supervisor and the criminal activity involved five or more participants.

        **(2) Acceptance of Responsibility:** The parties agree that 3 levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the government of the defendant's intention to plead guilty.  The parties agree that the defendant's eligibility for this deduction is based upon information presently known.  If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

    c. **Estimated Total Offense Level:** The parties estimate that the Total Offense Level is 17.

    d. **Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court.  Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category.  The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

  e. **Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein.  The parties may not have foreseen all applicable Guidelines.  The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

7. **WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

  a. **Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

    **(1)**  **Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery, the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

    **(2)**  **Sentencing Issues:** In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining a Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea and the agreed Total Offense Level and sentences the defendant within or above that range.

    **b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

    **c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

    **a. Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

    **b. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

    **c. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the

term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished.

   d. **Mandatory Special Assessment**:  Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $400, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

   e. **Possibility of Detention**:  The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

   f. **Fines, Restitution and Costs of Incarceration and Supervision**:  The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss determined by the Court, including all relevant conduct loss. The defendant agrees to provide full restitution to all victims of all charges in the indictment.

   g. **Forfeiture**:  The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees to abandon her interest in all seized items and

further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies).

The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. Defendant agrees to the entry of a forfeiture money judgment against the defendant and in favor of the Government in the amount of $34,109.66. The defendant agrees the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence. The defendant agrees not to object to any administrative, civil, or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the government and/or to rebut the claims of nominees and/or alleged third party owners. The defendant knowingly and intelligently waives all constitutional, statutory, and equitable challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument.

## 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to

require the government to prove the elements of the offenses against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

14

**10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:**

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

**11. CONSEQUENCES OF POST-PLEA MISCONDUCT:**

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

**12. NO RIGHT TO WITHDRAW GUILTY PLEA:**

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except

15

where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

| | |
|---|---|
| 3/9/23<br>Date | JONATHAN A. CLOW<br>Assistant United States Attorney |
| 3-9-23<br>Date | NIKIA A. FRENCH<br>Defendant |
| 3-9-23<br>Date | JULIE CLARK<br>Attorney for Defendant |

16